

# THE ATTORNEY GENERAL
## OF TEXAS

**GERALD C. MANN**

JO[redacted]

ATTORNEY GENERAL

AUSTIN 11, TEXAS

Hon. Julian E. Weisler
County Attorney
Washington County
Brenham, Texas

Opinion No. O-2433
Re: Can the Washington County
(Blinn) Junior College levy and
collect a tax within the limit
prescribed by law and set aside
the income therefrom for the
purpose of constructing and re-
pairing a gymnasium, and borrow
money against said funds for the
construction thereof? And re-

Dear Sir:

lated question.

Your recent request for an opinion of this department
on the questions as herein stated has been received.

We quote from your letter as follows:

"(1) Can the Washington County (Blinn) Junior
College levy and collect a tax within the limit pre-
scribed by law and set aside the income therefrom
for the purpose of constructing and repairing a gym-
nasium, and borrow money against said funds for the
construction thereof?

"(2) Can the Washington County (Blinn) Junior
College borrow money upon its credit, and pledge as
collateral security for such loan promissory notes
executed in its favor by residents of Washington
County, Texas?

"Statement:

"Washington County (Blinn) Junior College wishes
to build a gymnasium and the construction has been
started and is well under way, and the school wants
to borrow money to complete it. The School has pro-
cured Federal Aid for the construction of the gymna-
sium and the citizenship of Brenham and Washington
County have executed notes in the sum of $7500.00 in
favor of the college, which are direct obligations
of the individuals executing them, and which notes the
school proposes to use and pledge as additional secur-
ity for their loan in the sum of $7500.00.

"At an election held in 1937 the Junior College District was voted and a ten cent tax was favorably voted for the support and maintenance of the college, and for the acquiring of property for the college. At this time it is thought that eight cents of the tax allowed to be levied and collected will be sufficient for the support and maintenance of the college used with the tuition received from the students, and that the balance of two cents would be available and can be applied to improvements and construction of the College Buildings."

Section 4 of Article 2815h, Vernon's Annotated Civil Statutes, reads as follows:

"Sec. 4. A Junior College established and maintained by an Independent School District or city that has assumed control of its schools, or where the same has been organized as a Junior College District under the provisions of this Act prior to October 15, 1935, as an independent entity, or may hereafter be so created, and/or wherein the boundaries of the Junior College District are the same, or substantially the same, as the Independent School District, shall be governed, administered, and controlled by and under the direction of the Board of Education of such District or city.

"The said Board of Education of such Junior College District, under the provisions of this Act, shall in addition to all of the powers and duties vested in them by the terms of this Act, be furthermore vested with all the rights, powers, privileges, and duties conferred and imposed upon Trustees of Independent School Districts by the General Laws of this State, so far as the same may be applicable thereto and not inconsistent with this Act."

Section 7 of Article 2815h, supra, provides in part as follows:

"The Junior College District created under this Act shall have the power to issue bonds for the construction and equipment of school buildings and the acquisition of sites therefor, and to provide for the interest and sinking fund for such bonds by levying of such taxes as will be necessary in this connection. The Junior College District shall also levy

and collect taxes for the support and maintenance of the Junior College, provided that no bonds shall be issued and no taxes shall be collected until by vote of the majority of the qualified voters of the Junior College District, at an election called for that purpose in accordance with the provisions of the General Law providing for similar elections in Independent School Districts, such bonds and taxes are authorized. The election for the issuance of such bonds for the levying of such tax or taxes, shall be ordered by the Board of Education of the Junior College upon petition signed by ten (10) per cent of the qualified property-taxpaying voters residing in such District, praying for the issuance of such bonds and the levying of tax or taxes...."

Section 14 of the above mentioned statutes provides that:

"Sec. 14. No funds received for school purposes from the State Available School fund or raised by local taxation for school purposes under the General or Special Laws, except as in this Act specifically provided, or except as may be hereafter provided by the Legislature of the State of Texas, shall be used for the establishment, support, and maintenance of the Junior College."

Section 20 of Article 2815h provides in part that:

"Sec. 20. A Union Junior College, a County Junior College or a Joint County Junior College, shall be governed, administered and controlled by and under the direction of a Board of seven Junior College Trustees, elected at large from the Junior College District by the qualified voters of said district with such terms of office as may be provided under the General Law for Trustees in Independent School Districts.... Said Board of Trustees shall adopt such rules, regulations and by-laws as they may deem proper, and they shall have exclusive power to manage and govern said Junior College, and as such they shall constitute a body corporate by the name of the Junior College District _____, State of Texas, and in that name may acquire and hold real and personal property, sue and be sued, and may receive bequests and donations, or other moneys or funds coming legally into their hands, and may perform other acts for the promotion of education in said district."

Article 2802e-1, Vernon's Annotated Civil Statutes, provides that:

"All independent school districts, and all cities which have assumed the control of the public schools situated therein, shall have power to build or purchase buildings, and grounds located within or without the district or city, for the purpose of constructing gymnasia, stadia, or other recreational facilities, and to mortgage and encumber the same, and the income, tolls, fees, rents, and other revenues therefrom, and everything pertaining thereto, acquired or to be acquired, and to evidence the obligation therefor by the issuance of bonds to secure the payment of funds to purchase or to construct, or to purchase and construct the same, including the purchase of equipment and appliances for use therein, and as additional security therefor by the terms of such encumbrance, may grant to the purchaser under sale or foreclosure thereof a franchise to operate said properties so purchased for a term of not more than ten (10) years after such purchase...."

This statute further provides for the issuance of bonds for the purposes therein stated, the form of said bonds and the manner in which they are to be paid. We are of the opinion that this statute is not applicable to the questions under consideration.

Section 6 of Senate Bill No. 134, Acts of the 46th Legislature, 1939, provides that:

"Sec. 6. Said Board shall have the authority to borrow money on the credit of the school funds of said District to meet salaries of teachers and other current expenses when the funds on hand are not sufficient to meet the same, to be secured by a pledge of the current revenues of the year. All such current loans shall be paid within the fiscal school year in which such current loans were made, and from the funds accruing for the support of the District within such given school year. The amount so borrowed shall at no time exceed one-third of the sum estimated for current expenses, as shown by the school budget of that year."

Senate Bill No. 134, Acts of the 46th Legislature, 1939, is a special law, and this opinion is not to be construed as passing upon the constitutionality of this Act.

The general rule is that the trustees of independent school districts possess only the powers expressly conferred by law and necessarily implied from the powers conferred. Originally the statute (Article 2715) granted to trustees of independent school districts the same authority, as regards the establishment and maintenance of schools, that is conferred upon the governing bodies of incorporated cities and towns; and in determining the authority of such boards, the courts have applied the same rules as applied in municipal corporations. As amended, the statute merely gives the authority conferred by law upon independent school districts. Tex.Jur., Vol. 37, pp. 939-940; Harlingen Independent School District vs. C. H. Page & Bros., 48 S.W. (2d) 983; Donna Independent School District vs. First State Bank, 227 S.W. 974.

In view of the foregoing authorities, with reference to your first question, you are respectfully advised that it is the opinion of this department that the Washington County (Blinn) Junior College may levy and collect a tax within the limits prescribed by law for the purposes provided by the applicable statutes. However, said college does not have the legal authority to set aside the income therefrom for the purpose of constructing and repairing a gymnasium and borrowing money against said funds for the construction thereof.

Under the facts stated in your inquiry and the above mentioned authorities, your second question is respectfully answered in the negative.

Trusting that the foregoing fully answers your inquiry, we are

APPROVED JUN 15, 1940
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED: OPINION COMMITTEE
BY:      BWB, CHAIRMAN

AW/oe:wb

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Ardell Williams
Ardell Williams, Assistant